IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PROJECTS MANAGEMENT COMPANY, )<br>　Plaintiff, )<br> )<br> )<br>v. )<br> )<br>DYNCORP INTERNATIONAL, LLC, )<br>　Defendant. ) | Case No. 1:13-cv-331 |

## MEMORANDUM OPINION

In this breach-of-contract action, Projects Management Company ("PMC") claims DynCorp International, LLC ("DynCorp") breached Subcontract Number 08-SC-LES-CIVPOL-PMC-002 ("Subcontract 002") by paying invoices for over 1.2 million dollars to a bank account in Lebanon not specifically authorized in Subcontract 002. DynCorp claims no breach occurred because payments were made to the Lebanon bank account in accordance with specific instructions issued by PMC's principal agents. As damages for the alleged breach of contract, PMC seeks the full amount of the payments made by DynCorp to the Lebanon account—more than 1.2 million dollars—notwithstanding that PMC hired subcontractors to do all the work under Subcontract 002 and certain of these subcontractors and certain PMC employees were paid from the Lebanon account.

Now that discovery has been completed, DynCorp seeks summary judgment on various grounds, including that PMC's claim for the full amount of the payments does not take account of the governing law's requirement that costs avoided must be shown as an element of damages. PMC also filed a motion for partial summary judgment. These motions were fully briefed and argued, but a ruling on the motions was deferred pending disposition of an appeal in a closely

1

related case. Following disposition of that appeal—which affirmed dismissal of the closely related case[1]—the parties were directed to submit supplemental memoranda discussing the effect, if any, of that disposition on the instant case. Now, following additional oral argument and submission of supplemental briefing, the matter is ripe for decision.

For the reasons that follow, PMC's claim for breach of Subcontract 002 fails because PMC relies on a measure of damages—the full amount of payments to the Lebanon account without accounting for avoided costs—that is contrary to governing law. Accordingly, DynCorp's motion for summary judgment must be granted, and PMC's motion for partial summary judgment must be denied.

## I.

PMC is a Kuwaiti limited liability corporation owned by certain members of the Al Muhanna family, who reside in Kuwait. In or about July 2008, PMC responded to a request for proposal issued by DynCorp, a limited liability corporation with its principal place of business in Virginia, for work to be done on the renovation of villas in Iraq for the Iraqi judiciary. PMC's response to the request for proposal identified two PMC executives as points of contact: Hussein Fawaz, PMC's Managing Director, and Greg Byers, PMC's Theater Program Manager. Fawaz executed the proposal on PMC's behalf. DynCorp accepted PMC's proposal, and on October 20, 2008, PMC and DynCorp executed Subcontract 002 for the renovation of villas in Iraq for the Iraq judiciary.[2] Byers executed the subcontract on PMC's behalf, and was listed in Subcontract 002 as PMC's point of contact for DynCorp. It is undisputed that PMC itself did not perform

---

[1] *Projects Management Co. v. DynCorp Int'l, LLC,* 734 F.3d 366 (4th Cir. 2013).

[2] This contract was executed in support of a prime contract between DynCorp and the United States Department of State, U.S. Government Prime Contract No. S-LMAQM-04-C-0030.

2

any of the construction and renovation work associated with Subcontract 002; instead, PMC retained subcontractors to perform all the work.

Subcontract 002 provided with respect to payment that DynCorp would pay PMC's invoices by wire transfers made to PMC's bank account at the Kuwait Gulf Bank ("the Kuwait account"). These payment instructions were changed at the direction of Byers and Fawaz. On November 4, 2008, Byers e-mailed Stan Burton, DynCorp's Director of Contracts-Civpol, and changed the payment instructions for Subcontract 002. The new payment instructions, as directed by Byers, stated that all payments on Subcontract 002 were to be made to a different account at the National Bank of Kuwait located in Beirut, Lebanon ("the Lebanon account"). Burton, by e-mail of the same date, asked Byers to bring the new banking instructions to Burton with the first invoice. On the same day, Byers complied with this request by delivering to Burton the first invoice under Subcontract 002 together with the new banking instructions designating the Lebanon account for payment of the invoice.

On December 29 and 30, 2008, Savita Aranha of DynCorp International Free Zone's ("DIFZ")[3] accounts payable office in Dubai sent e-mails to DIFZ finance specialists Ana Dizon and Helen Mae Lagrimas, both of whom worked in DIFZ's finance office in Iraq. In these e-mails, Aranha noted that the banking instructions on the face of a PMC invoice did not match the banking instructions on file for PMC, which called for payment of invoices to be made to the Kuwait account. Aranha asked Dizon and Lagrimas to provide a letter from PMC confirming PMC's request to change banking details from the Kuwait account to the Lebanon account. Dizon and Lagrimas then sent emails to four PMC employees—Byers, Fawaz, and two PMC employees working in Iraq who ordinarily delivered PMC invoices to DIFZ's Iraq office—

---

[3] DIFZ is a wholly-owned DynCorp subsidiary involved in the administration of Subcontract 002.

3

seeking written confirmation of the request to change the banking instructions for DynCorp's payment of invoices under Subcontract 002. Fawaz responded to Dizon by e-mail, attaching to the e-mail a letter by Fawaz to Lagrimas written on PMC letterhead providing for payment of invoices under Subcontract 002 to the Lebanon account in lieu of the Kuwait account. The letter stated, "Please find below our 2nd banking details for PMC that shall be used specifically for all Contracts [except for the O&M Contract]." *Projects Management Co. v. DynCorp Int'l, LLC*, Case No. 1:13-cv-331, Doc. 128, Ex. 14 (E.D. Va. Aug. 23, 2013). Fawaz signed the letter as PMC's "Managing Director." As further confirmation of the new payment instructions, Byers, on December 30, 2008, sent Dizon an e-mail, with a copy to DynCorp's Burton, stating, "The Villas Progress Payments…we will want sent to the new Bank Details sent to you by [Fawaz]." *Projects Management Co. v. DynCorp Int'l, LLC*, Case No. 1:13-cv-331, Doc. 128, Ex. 15 (E.D. Va. Aug. 23, 2013). Byers signed the e-mail as PMC's "Theater Program Manager." DynCorp was never advised by Byers, Fawaz, or anyone else that the Lebanon account was in fact Fawaz's personal bank account.

Thereafter, and for approximately twelve months, DynCorp made payments totaling approximately 1.2 million dollars to the Lebanon account for Subcontract 002 invoices that requested payment to that account. During this twelve month period, no one at PMC objected to DynCorp making payments to the Lebanon account, nor did anyone at PMC advise DynCorp that Fawaz or Byers lacked the necessary authority to direct changes in banking instructions or to modify the subcontract's provision regarding the payments.

The record reflects that in June 2009—in the midst of the twelve-month period during which DynCorp made payments to the Lebanon account—PMC learned that Fawaz had been making certain payments from the Lebanon account to subcontractors for work done on

Subcontract 002. Specifically, PMC's Rule 30(b)(6) witness testified that these payments "related to the work which was being carried out by PMC in Iraq" for DynCorp, including payments to "some of the suppliers" and at least one payment to PMC's primary subcontractor, Cater Corp. *Projects Management Co. v. DynCorp Int'l, LLC*, Case No. 1:13-cv-331, Doc. 128, Ex. 21, p. 136 (E.D. Va. Aug. 23, 2013). Although bank statements from the Lebanon account reflect some payments made to subcontractors and employees pursuant to Subcontract 002, it is impossible to establish with complete certainty which subcontractors were paid pursuant to Subcontract 002 and how much these subcontractors were paid. This is so because payments from the Lebanon account were also made to subcontractors and to PMC employees pursuant to a second subcontract, as well as Subcontract 002.[4]

In this case, PMC argues that the proper measure of damages is the full amount—over 1.2 million dollars—that DynCorp paid to the Lebanon account under Subcontract 002, and that PMC need not subtract from this amount the avoided costs, namely the sums paid to PMC's subcontractors from the Lebanon account. DynCorp argues that PMC's damage claim for the entire amount DynCorp paid to the Lebanon account without accounting for PMC's avoided costs is contrary to the governing law and thus that PMC's breach of contract claim fails, as damages are an essential element of the breach of contract claim.

In the course of discovery, DynCorp understandably sought to determine whether avoided costs existed and, if so, the magnitude of these costs. PMC resisted this effort and refused to provide this information. When PMC's Rule 30(b)(6) witness on this issue was asked whether payments to subcontractors under Subcontract 002 had been made from the Lebanon

---

[4] Subcontract 08-SC-LES-CIVPOL-PMC-001, the subcontract at issue in the first case between PMC and DynCorp. *Projects Management Co. v. DynCorp Int'l, LLC,* 1:11-cv-1345 (E.D. Va. 2011).

5

account and, if so, the identity of subcontractors and the amount of such payments, the 30(b)(6) witness testified that PMC was "not in a position to do any further work in terms of identifying the [subcontractors] and what monies were owed to them, what has been paid, not paid; and this is something which was a conscious decision taken in consultation with our counsel." *Projects Management Co. v. DynCorp Int'l, LLC*, Case No. 1:13-cv-331, Doc. 128, Ex. 21, p. 214 (E.D. Va. Aug. 23, 2013). In other words, PMC made clear its decision to assert a damage claim for the full amount DynCorp paid to the Lebanon account without accounting for avoided costs, and it refused to provide full discovery on avoided costs. Significantly, PMC's Rule 30(b)(6) witness also testified that he was unaware of any subcontractors on Subcontract 002 that have sued PMC for failure to pay for work the subcontractors performed under Subcontract 002.

This is not the first time that DynCorp and PMC have disputed whether PMC's proof of damages must account for avoided costs. In 2011, PMC sued DynCorp for breach of Subcontract 08-SC-LES-CIVPOL-PMC-001 ("Subcontract 001"),[5] a subcontract essentially similar to Subcontract 002. Pursuant to Subcontract 001, PMC was obligated to provide support for DynCorp's prime contract with the United States Department of State to assist with the development of an Iraqi civilian police force. As was true with Subcontract 002, all the work done under Subcontract 001 was performed by subcontractors hired by PMC. Also, like Subcontract 002, Subcontract 001 instructed DynCorp to pay PMC invoices by wire transfer to the Kuwait account. Further, as occurred here with respect to Subcontract 002, Fawaz and Byers, during the term of Subcontract 001, instructed DynCorp to pay the invoices under Subcontract 001 into the same Lebanon account at issue here in lieu of the Kuwait account designated in both subcontracts. And as occurred in this case, the new payment instructions

---

[5] *Projects Management Co. v. DynCorp Int'l, LLC*, 1:11-cv-1345 (E.D. Va. 2011). This litigation is referred to throughout as *PMC* I.

were formally affirmed by Byers in writing. As a result, during the remaining period of Subcontract 001 DynCorp paid PMC's invoices by wiring the money to the Lebanon account. In this case, as in *PMC* I, PMC consistently claimed that the proper measure of PMC's damages for the breach of Subcontract 001 was the total amount of money DynCorp paid into the Lebanon account without accounting for avoided costs. And in this case, as in *PMC* I, PMC has declined to provide a full accounting of these avoided costs,[6] contending instead that the proper measure of damages is the full amount DynCorp paid to the Lebanon account.

In *PMC* I, PMC's case was dismissed on the ground that PMC's proffered measure damages was impermissible under governing law because it did not account for avoided costs, and alternatively, dismissal was also ordered as a sanction for PMC's discovery defalcations. *Projects Management Co. v. DynCorp Int'l, LLC*, Case No. 1:11-cv-1345 (E.D. Va. Aug. 12, 2012) (Order). PMC timely appealed the dismissal, and on November 5, 2013, the Fourth Circuit affirmed the dismissal on the ground that PMC's discovery defalcations warranted the dismissal sanction. The Fourth Circuit did not reach or decide the damages dispute. *Projects Management Co. v. DynCorp Int'l, LLC*, 734 F.3d at 377.

Although DynCorp has moved for summary judgment on four grounds,[7] it is necessary to reach and decide only whether PMC's breach of contract claim must be dismissed on the ground

---

[6] PMC, at several points during *PMC* I, refused to comply with DynCorp's discovery requests aimed at ascertaining the identity of PMC's subcontractors, the subcontracts between PMC and its subcontractors, and whether monies were paid from the Lebanon account to PMC's subcontractors and employees for work done in connection with Subcontract 001.

[7] DynCorp's grounds for summary judgment are as follows:

(1) PMC failed to disclosed and establish a legally cognizable theory of damages;

(2) PMC is bound by its representation to DynCorp that Byers had full authority to act for PMC on all matters;

7

that its claim for damages—an essential element of the claim—is based on an erroneous view of the governing law.

## II.

The choice of governing law is the threshold issue. Although the parties do not sharply dispute the choice of law, neither are they in complete agreement.

Subcontract 002 specifies that the federal common law of government contracts and Virginia law govern the agreement. Specifically, Article XXIII of Subcontract 002 provides, in pertinent part, that:

> This Agreement will be construed and interpreted according to the federal common law of government contracts . . . [t]o the extent that the federal common law of government contracts is not dispositive, the laws of the Commonwealth of Virginia shall apply, irrespective of its choice of law rules.

Settled authority requires that choice of law provisions of this sort be given effect. As the Restatement (Second) of Conflict of Laws notes, "The law of the state chosen by the parties to govern their contractual rights and duties will be applied...unless either (a) the chosen state has no substantial relationship to the parties, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state." Restatement (Second) of Conflict of Laws § 187(2) (1971). Neither exception (a) nor (b) applies here. DynCorp has its principal place of business in Virginia, demonstrating a "substantial relationship" for application of Virginia law. *Ciena Corp. v. Jarrard*, 203 F.3d 312, 324 (4th Cir. 2000). Furthermore, because the subcontract at issue is in support of a prime

---

> (3) Byers and Fawaz were given express authority by PMC's project proposal to alter the invoicing instructions; and
>
> (4) Byers and Fawaz had apparent authority to direct DynCorp to charge the account to which DynCorp made payments.

contract to which the United States is a party, it is obvious that the federal common law of government contracts would have a substantial relationship to Subcontract 002. Moreover, the parties have not presented any argument that another state has a materially greater interest in application of any law other than the law of Virginia or the federal law of government contracts. Accordingly, it is clear that the choice of law provision in Subcontract 002 designating the federal law of government contracts or Virginia law applies to the instant dispute.

DynCorp, in support of its position, relies on both Virginia and federal law, noting that there is no substantial difference between the law governing damages in these two jurisdictions, whereas PMC cites only to Virginia law, maintaining that only Virginia law applies.[8] There is no sound reason to conclude only Virginia law applies. Accordingly, the choice of law provision will be given effect, and indeed, as reflected in the analysis that follows, there is no substantial difference between Virginia law and federal law on the proper measure of damages.

### III.

Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on

---

[8] PMC's sole basis for this assertion is a remark from the bench in the course of oral argument that "the choice of law clause is not broadly written to require application of federal common law and Virginia law to all disputes arising from the subcontract...So the choice of law clause in the subcontract does not decide...agency and authority." *Projects Management Co. v. DynCorp Int'l, LLC,* Case No. 1:11-cv-1345 (E.D. Va. May 10, 2012). PMC's reliance on this statement is misplaced, as this was a remark *obiter* in the course of oral argument and not a ruling. The choice of law provision is adequately broad to govern not just the interpretation of the contract, but issues of performance and breach as well. Moreover, the dismissal order in *PMC* I explicitly discussed both Virginia law and federal law on the question of the proper measure of damages, stating, "Under the governing law—either federal common law or Virginia law, the result...is the same: PMC has failed to provide a proper measure of damages." *Projects Management Co. v. DynCorp Int'l, LLC,* Case No. 1:11-cv-1345 (E.D. Va. Aug. 12, 2012) (Order). Neither party has advanced any persuasive reason to conclude that federal law and Virginia law differ on the issue of the proper measure of damages. The only Virginia decision to the contrary cited by PMC is *Burton's Ex'r v. Manson,* 142 Va. 500, 508 (1925). As noted *infra, Burton's Ex'r* is distinguishable and unpersuasive on this point. *See infra* Part III.

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden of the party seeking summary judgment "may be discharged by simply pointing out that there is an absence of evidence to support the nonmoving party's case." *Carr v. Deeds*, 453 F.3d 593, 608 (4th Cir. 2006). The party opposing summary judgment may not rest upon mere allegations and denials, and must instead "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the record on summary judgment, the court must determine "whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991).

> Under Virginia law, the elements of a breach of contract action are as follows:
>
> (1) A legally enforceable obligation of a defendant to a plaintiff;
>
> (2) The defendant's violation or breach of that obligation; and
>
> (3) Damage to the plaintiff caused by that breach of obligation.

*Ulloa v. QSP, Inc.*, 271 Va. 72, 79 (2006). It is well-established in Virginia that damages claimed by the plaintiff in a breach of contract action must be "limited to the pecuniary loss sustained." *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 156 (2009). Similarly, federal law states that "damages for breach of contract are designed to make the non-breaching party whole." *Anchor Sav. Bank, FSB v. United States*, 597 F.3d 1356, 1361 (Fed. Cir. 2010). The "non-breaching party is not entitled, through the award of damages, to achieve a position superior to the one it would reasonably have occupied had the breach not occurred." *LaSalle Talman Bank, FSB v. United States*, 317 F.3d 1363, 1371 (Fed. Cir. 2005). Thus, the damages awarded must "place the injured party in as good a position as it would have been had the

breaching party fully performed." *Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268, 1273 (Fed. Cir. 2008).

Both federal law and Virginia law provide that the plaintiff in a breach of contract claim bears the burden of proving damages, which includes both the claimed costs and avoided costs. For example, in *South Nuclear Operating Co. v. United States*,[9] the Federal Circuit held that it was necessary for a party seeking damages to "be precise about the nature and amount of the avoided costs it claims were involved" because it is the burden of the plaintiffs to establish a "plausible but-for world...[which] extends to avoided costs." *Id.* The Federal Circuit stated that the plaintiff bears the burden of showing both incurred and avoided costs because "the party incurring the relevant costs is in the best position to adduce and establish such proof."[10] *Id.* Similarly, in *Sunrise Continuing Care, LLC v. Wright*,[11] the Supreme Court of Virginia held that the plaintiffs were required in a breach of contract case to plead and prove the value received or costs avoided as well as the damage incurred. In that case, the Wrights had moved into an apartment at a continuing care facility owned by Sunrise Continuing Care. The Wrights claimed that they had experienced recurrent roof leaks in their apartment, and three years after moving into the facility, they sued Sunrise for breach of contract, seeking to recover their non-refundable entrance fee of over 200,000 dollars, as well as the monthly fees they had paid each month they had lived at the facility. In other words, the Wrights sought as damages all of the sums they had

---

[9] 637 F.3d 1297, 1304 (Fed. Cir. 2011).

[10] The Federal Circuit has stated that this burden to establish costs avoided will shift to the defendant where it would be unfair for the plaintiff to bear the burden, because plaintiff "cannot be expected to brainstorm every possible cost they would have saved in the non-breach world." *S. Nuclear Operating Co.*, 637 F.3d at 1304. Yet, here, PMC was clearly in the best position to establish costs avoided because PMC had access to the invoices and subcontracts.

[11] 277 Va. at 155-56.

paid to the care facility without accounting for value they received or costs they avoided. On these facts, the Supreme Court of Virginia held that the Wrights had failed as a matter of law to establish a claim for damages because the Wrights had put forward no evidence showing "the value of services they received from Sunrise during almost four years of residence." *Id.* at 155-56. Therefore, the Wrights' claim for breach of contract failed.

In sum, under both Virginia law and federal law, a plaintiff in a breach of contract action bears the burden of pleading and proving not only the value he did not receive under the contract as a result of the breach, but also the value he received or the costs he avoided.[12] This principle, applied here, compels the conclusion that PMC must plead and prove not only the amount of money that DynCorp wired to the Lebanon account instead of the Kuwait account in payment of Subcontract 002 invoices, but also the costs that PMC avoided by the undisputed fact that some of PMC's subcontractors and employees received payment from the Lebanon account, thereby relieving PMC of its obligation to pay the money it owed to those subcontractors and employees.

In *PMC* I, PMC's damages were stricken and the contract claim dismissed because PMC did not follow this principle and failed to account for the costs that it avoided by the fact that some of PMC's subcontractors and employees had received payment from the Lebanon account. *Projects Management Co. v. DynCorp Int'l, LLC*, Case No. 1:11-cv-1345 (E.D. Va. Aug. 12, 2012) (Order). Instead, PMC had maintained throughout the pendency of *PMC* I that the proper measure of damages was the amount DynCorp failed to pay to PMC's Kuwait account, without

---

[12] This principle also finds expression in a decision of a court in this district. *See Bernsen v. Innovative Legal Marketing, LLC*, 2012 WL 3912759 at *4 (E.D. Va. 2012) (holding that the counterclaim plaintiff's measure of damages was not in accordance with governing law because "like the plaintiffs in *Sunrise Continuing Care*, [the counterclaim plaintiff] has not offered any evidence from which the jury could measure the difference between the value of the services for which it contracted and the value of the services it received").

12

taking into account any payments made by Fawaz to PMC's subcontractors and employees—amounts PMC no longer owed. Accordingly, the measure of damages submitted by PMC in *PMC* I would have overcompensated PMC, and thus, PMC's measure of damages was stricken.

PMC claims the same measure of damages in the instant case as it claimed in *PMC* I and the breach of contract claim in this case fails for the same reason the similar claim failed in *PMC* I, namely the failure to account for costs avoided. Here, PMC's theory of damages, as stated in its response to DynCorp's interrogatory and as stated by PMC's Rule 30(b)(6) witness, is "the total value of all amounts that were invoiced to DynCorp under five invoices...totaling up to 1.23 million." *Projects Management Co. v. DynCorp Int'l, LLC*, Case No. 1:13-cv-331, Doc. 128, Ex. 21, p. 125 (E.D. Va. Aug. 23, 2013). In other words, PMC seeks damages equal to the sum total of invoice payments paid to the Lebanon account. But undisputed record evidence reflects:

> (1) that PMC did not perform the work associated with Subcontract 002, but instead retained subcontractors to perform that work;
>
> (2) that at least some subcontractors under Subcontract 002 were paid from the Lebanon account for work performed on Subcontract 002;
>
> (3) that PMC refused to identify the subcontractors under Subcontract 002 and the amounts paid from the Lebanon account to those subcontractors;
>
> (4) that PMC has not been sued by subcontractors alleging non-payment on Subcontract 002;[13]
>
> (5) that PMC cannot identify a single payment from its Kuwait account used to pay subcontractors for work performed on Subcontract 002;

---

[13] PMC's 30(b)(6) witness testified during his deposition that he was unaware of any subcontractors suing PMC for payments owed them under Subcontract 002. *Projects Management Co. v. DynCorp Int'l, LLC*, Case No. 1:13-cv-331, Doc. 128, Ex. 21, p. 238 (E.D. Va. Aug. 23, 2013).

13

(6) that bank statements produced during discovery for the Lebanon account contain entries indicating some payments were made from that account to PMC subcontractors under Subcontract 002; and

(7) that funds deposited into the Lebanon account were used to pay PMC employees.

In calculating its damages, PMC chose not to account for payments to subcontractors and employees made from the Lebanon account. Moreover, because PMC has refused to produce complete information regarding the identities of their subcontractors and the money still owed to any subcontractors, a jury would find it impossible to determine how much damage PMC actually suffered as a result of the alleged breach of contract—namely, DynCorp's payment of invoices under Subcontract 002 to the Lebanon account. To allow PMC's measure of damages would give PMC an unwarranted windfall impermissible under federal or Virginia law, which requires that the plaintiff's measure of damages account for both incurred damages and avoided costs.

PMC alleges that Virginia law holds that "the defendant has the burden of proving that the account sued on has been paid" and cites to *Burton's Ex'r v. Manson*, a 1925 case from the Supreme Court of Virginia. 142 Va. 500, 508 (1925). *Burton's Executor* was an action by the executor of Burton's estate against H.W. Manson and the administrator of Manson's wife's estate. Burton's executor sought recovery on a bond executed by Manson and his wife, which was payable to Burton on demand. When the executor of Burton's estate sued to recover on the bond, the Mansons asserted that the bond had been paid in full by board and lodging furnished by the Mansons to Burton. Thus, as the Supreme Court of Virginia put it, the "main question at issue…[is] whether or not the bond and account sued on had been paid, and on this question the

burden of proof [is] on the defendants."[14] *Id.* at 507. Based on that statement in *Burton's Executor*, PMC claims that DynCorp, not PMC, has the burden of showing costs avoided by PMC because of payments made from the Lebanon account to PMC's subcontractors under Subcontract 002. Accordingly, PMC argues that it "is not required...to show that it did not receive the benefit of payments made from Mr. Fawaz's personal bank account to third parties."

PMC's reliance on *Burton's Executor* is misplaced. In *Burton's Executor*, the Supreme Court of Virginia did not discuss the third element of a breach of contract claim that is at issue here—the proper measure of damages. In fact, *Burton's Executor* was not about a breach of contract at all. Instead, *Burton's Executor* concerned repayment of a bond. In *Burton's Executor*, the defendant argued that he did not need to repay the bond because he had already paid the bond through furnishing room and board, and the Supreme Court of Virginia simply held, sensibly, that the defendant had the burden of proving such a defense. The facts here are inapposite to the facts in *Burton's Executor*. In this case, DynCorp does not contend that there was no breach of contract because DynCorp has paid the full value of the contract to PMC. That is, DynCorp does not assert the defense of payment to prove that DynCorp did not breach the contract. Instead, DynCorp contends that, if a jury were to find that it breached the contract, a jury would be unable to award a measure of damages in accordance with governing law because PMC has not provided proof of the correct measure of damages. Thus, *Burton's Executor* does not control whether PMC must account for payments made from the Lebanon account when computing its damages.

In sum, it is clear that plaintiff has not stated a legally cognizable measure of damages for DynCorp's alleged breach of Subcontract 002, and has therefore failed to establish a *prima facie*

---

[14] The vast majority of the opinion discusses the degree and quality of corroboration required for defendants to discharge that burden.

15

claim for breach of contract. By failing to identify the subcontractors and employees paid from the Lebanon account, PMC has failed to offer "any evidence from which the jury could measure the difference between the value of the services for which it contracted and the value of the services it received." *Bernsen*, 2012 WL 3912759 at *4 (*citing Sunrise Continuing Care*, 227 Va. at 155-56). PMC's failure to establish damages "warrants the dismissal of a breach of contract claim." *Isle of Wight County v. Nogiec*, 281 Va. 140, 147 (2011).

## IV.

In reliance on the ruling in *PMC* I, DynCorp claims that PMC is collaterally estopped from relitigating the issue of the proper measure of damages here. Indeed, the parties spilled much ink on this issue. In the end, the result reached here with respect to the damages issue makes it unnecessary to decide the collateral estoppel issue. Nonetheless, it is worth noting that DynCorp's reliance on *Ritter v. Mount St. Mary's College*[15] in support of its argument that collateral estoppel bars PMC's claims is misplaced. DynCorp argues that *Ritter* holds that when a district court's judgment rests on two independent grounds and the district court's judgment is subsequently affirmed, both grounds are entitled to preclusive effect in subsequent litigation between the same parties even if the appellate court's decision only addressed one of the two independent grounds.

Yet, it is well-established in the Fourth Circuit that "if a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." *Lisa Lee Mines v. Director, Office of Worker's Compensation Programs*, 86 F.3d 1358, 1363 (4th Cir. 1996). In fact, *Ritter* does not hold to the contrary; instead, the Fourth

---

[15] 814 F.2d 986 (4th Cir. 1987).

16

Circuit in *Ritter* stated that if "one of the two determinations is upheld on appeal...collateral estoppel can obtain *as to that issue*." *Ritter*, 814 F.2d at 993 (emphasis added). Here, one of the two independent grounds for dismissal—the discovery defalcations of PMC—was upheld on appeal to the Fourth Circuit, and collateral estoppel applies only to that issue. But because the Fourth Circuit expressly neither reached nor decided the issue of the proper measure of damages, PMC's claim is not collaterally estopped by conclusions of law regarding damages in *PMC* I.

### V.

In sum, both the federal law of government contracts and Virginia law require the plaintiff in a breach of contract action to plead and prove a measure of damages that includes not only the harm suffered but also the costs avoided. PMC has failed to do so here; PMC's measure of damages does not account for payments made to PMC's subcontractors and employees from the Lebanon account, and thus PMC has failed to advance and prove a measure of damages that is in accordance with the governing law. Because damages are an essential element of any breach of contract claim, PMC's breach of contract claim against DynCorp fails and summary judgment must be entered for DynCorp.

An appropriate Order will issue.

Alexandria, Virginia
March 26, 2014

/s/
_____
T. S. Ellis, III
United States District Judge